**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| SCOTT KORN | : | Case No.: 14-13138-ELF |
| | : | |
| Debtor | : | |
| | : | |
| JOHN BROWN | : | |
| | : | |
| Plaintiff, | : | |
| | : | Adversary No.: |
| v. | : | |
| | : | |
| SCOTT KORN | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT OBJECTING**
**TO DEBTOR'S DISCHARGE**

John Brown ("Brown") objects to the discharge of Scott Korn ("the Debtor") pursuant to

11 U.S.C. § 727 as follows:

**Jurisdiction and Venue**

1.      Brown is a judgment creditor of the Debtor with an unsecured claim of

$2,413,197.00 and has standing to object to the Debtor's discharge pursuant to 11 U.S.C. §

727(c)(1).

2.      The Debtor resides at 1233 Meadowbank Road, Villanova, Pennsylvania 19085.

3.      This Court has jurisdiction to hear and determine this adversary proceeding

pursuant to 28 U.S.C. §§ 157 and 1334(b) because this is a proceeding to determine an objection

to discharge under Title 11 to the United States Code (the "Bankruptcy Code").

4.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

5. Venue of this adversary proceeding is proper in this Court pursuant of 28 U.S.C. § 1409 because Debtor's case is pending in this district.

**Procedural History**

6. On April 9, 2014 (the "Verdict Date"), a verdict was entered in the amount of $2,413,197.00 against the Debtor and in favor of Brown in the Philadelphia Court of Common Pleas case number 091202418.

7. On April 21, 2014 (the "Petition Date"), the Debtor filed a petition for relief in this district under chapter 11 of the Bankruptcy Code.

8. The Debtor filed his bankruptcy schedules and statement of financial affairs on May 2, 2014 and an amended schedule "F" on May 9, 2014. These schedules and statements shall be referred to in this complaint as the "Original Schedules" and the "Original Statement of Financial Affairs."

9. The section 341 meeting of creditors in the chapter 11 case was held on May 6, 2014.

10. Brown obtained limited relief from the automatic stay and reduced his verdict to judgment on June 23, 2014. The Debtor has not appealed the judgment.

11. On July 11, 2014, the Debtor filed a chapter 11 plan of reorganization and disclosure statement (the "Disclosure Statement").

12. On August 29, 2014, the Debtor filed a first amended chapter 11 plan and a first amended disclosure statement (the "First Amended Disclosure Statement").

13. On September 24, 2014, American Express Bank, FSB and American Express Centurion Bank (collectively, "American Express") filed a complaint (the "American Express

2

Complaint") against the Debtor seeking a determination that the debt owed to American Express is not dischargeable pursuant to 11 U.S.C. § 523.

14.     On October 6, 2014, Brown filed a motion (the "Motion to Convert") seeking the appointment of an examiner or trustee or the conversion of the case to chapter 7.

15.     As a result of information in the American Express Complaint and at the request of Brown, on October 15, 2014, the Court ordered the Debtor to file all necessary amendments to the bankruptcy schedules and statement of financial affairs, and all amendments to previously filed monthly operating reports and the monthly operating report for September 2014, on or before November 10, 2014.

16.     On November 10, 2014, the Debtor filed amendments to his bankruptcy schedules, statement of financial affairs and monthly operating reports.  Further amendments to these disclosures were made by the Debtor at various times between November 10, 2014 and November 21, 2014.  These various amendments shall be referred to in this complaint as the "Amended Schedules", the "Amended Statement of Financial Affairs" and the "Amended Monthly Operating Reports."

17.     The Court held evidentiary hearings on the Motion to Convert on November 19, 2014 and November 24, 2014,

18.     On December 18, 2014, the Court entered an opinion and order granting the Motion to Convert and converting the Debtor's chapter 11 case to chapter 7.

19.     On March 3, 2015, the Acting United States Trustee filed a complaint (the "U.S. Trustee Complaint") objecting to the Debtor's discharge.

**The Post-Verdict/Pre-Petition Transactions**

20. During the twelve-day period between the Verdict Date and the Petition Date, the Debtor used American Express credit card accounts to make purchases totaling approximately $365,000, including the purchase of two new Porsche automobiles, a 2009 BMW automobile and other goods and services.

21. The Debtor titled the Porsches and 2009 BMW in joint names with his wife claiming under oath during a deposition in the bankruptcy case on November 14, 2014 that he and his wife had an agreement to own vehicles jointly.

22. Contrary to the Debtor's testimony, the Debtor's wife owns and leases various vehicles in her own name and the Debtor owned a Cadillac Escalade and leased a BMW in his own name before the bankruptcy.

23. During the twelve-day period between the Verdict Date and the Petition Date, the Debtor transferred his Cadillac Escalade to his wife through a third-party after the Debtor completed his credit counseling course in anticipation of the bankruptcy.

24. Upon information and belief according to the U.S. Trustee Complaint, on April 15, 2014, the Debtor sold all of the funds and securities in an LPL Brokerage account resulting in net proceeds of $989,608.20.

25. Upon information and belief according to the U.S. Trustee Complaint, and on April 16, 2014, the Debtor transferred $255,000 of the cash proceeds from the LPL Brokerage account to his Meridian checking account.

26. Upon information and belief according to the U.S. Trustee Complaint, on April 17, 2014, the Debtor withdrew $225,847.57 in cash from his Meridian checking account and placed all or the majority of this cash in a safe.

27. The Debtor concealed the transactions involving the Porsches, BMW, Cadillac Escalade and the LPL Brokerage account and cash proceeds by failing to disclose them in his Original Schedules, Original Statement of Financial Affairs, the Disclosure Statement or the First Amended Disclosure Statement.

**The Concealed Property**

28. The Debtor concealed the following property by failing to disclose them in his Original Schedules, the Disclosure Statement or First Amended Disclosure Statement:

| **Description** | **Amount as Subsequently Disclosed by the Debtor** |
|---|---|
| Cash on hand | $ 214,000.00 |
| Meridian Bank checking account | 44,163.37 |
| LPL Brokerage account | 750,836.84 |
| First Niagara checking account | 1,000.00 |
| Household furnishings – Lake Harmony | 10,000.00 |
| Phoenix Life Policy | 0.00 |
| 2014 Porsche Cayman | 64,169.90 |
| 2014 Porsche 911 Carrera | 111,290.50 |
| 2009 BMW X3 | 24,375.00 |
| 2007 21 foot ski boat | 15,500.00 |
| 2005 Yamaha wave runner | 2,500.00 |
| 2007 Kawasaki wave runner | 2,000.00 |
| 2012 Pa tax refund | 12,000.00 |
| 2013 Pa tax refund | 9,600.00 |
| 2013 federal tax refund | 11,115.00 |
| The Korn Group General Partner, LLC | 0.00 |
| EPI Engineering, LLC | Unknown |
| Tulsa Paper Group, LLC a/k/a Tulsa Paper | 0.00 |
| Manitou Management, LLC | 0.00 |
| Alyis Paper Group, LLC | 0.00 |
| Mutt & Jeff, LLC | 0.00 |
| MLGP, LLC (DE entity) | Unknown |
| LSM, Inc. | 0.00 |
| KAP Paper Products, Inc. | 0.00 |

29. The Debtor stated in his Original Schedules that he had an individual account at Meridian Bank with a balance of $9,315.99 on the Petition Date.

30. Upon information and belief according to the U.S. Trustee Complaint, the actual balance in the individual account at Meridian Bank on the Petition Date was $14,697.94.

**Other False Statements or Omissions in the Original Schedules**

31. The Debtor filed false Original Schedules by failing to disclose the following creditors on his original schedule "F":

    a.    Meridian Bank;

    b.    U. S. Small Business Administration;

    c.    Richard D. and Mary C. Maffezoli;

    d.    Tavia Gordon;

    e.    Arrow Pool Service; and

    f.    Moss A. Jackson, Ph.D.

32. The Debtor filed false Original Schedules by stating on his original schedule "I" that he received income of $27,870.80 each month from rents and/or the operation of a business. The Debtor contradicted this statement in the Amended Schedules by stating his monthly income was $14,200 from distributions from business entities

33. The Debtor filed false Original Schedules by stating that his spouse was not employed. The Debtor contradicted this statement in his Amended Schedules by stating that his spouse received income of $3,846.14 for work as an administrator at Bengal Converting Services, Inc.

**The False Statement of Financial Affairs**

34. The Debtor concealed the following by failing to disclose them in Original Statement of Financial Affairs:

| Description | Amount as Subsequently Disclosed by the Debtor |
|---|---|
| Transfer of 2013 Cadillac Escalade | $ 44,099.00 |
| Transfer of Bengal Direct, LLC | Unknown |
| Transfers/Loans to Bengal Converting | 232,000.00 |
| Transfer to Bengal Direct | 65,000.00 |
| 2014 YTD disability income | 33,333.33 |
| 2013 disability income | 100,000.00 |
| 2012 disability income | 100,000.00 |
| Safe deposit boxes (2) | 0.00 |

35. The Debtor misstated the Original Statement of Financial Affairs by stating that he received income during the first three and one half months of 2014 totaling $60,859, $355,000 in 2013, and $167,322 in 2012. The Debtor's final Amended Statement of Financial Affairs discloses that the Debtor received $73,600 in 2014 prior to the Petition Date, and had a loss of $191,799 in 2013.

36. The Debtor concealed his income from sources other than employment or the operation of a business by failing to disclose in the Original Statement of Financial Affairs that Phoenix Life pays the Debtor's annual premium for his life insurance policy as long as he is disabled and that these payments were $33,333.33 in 2014, $100,000 in 2013, and $100,000.

37. The Debtor concealed potentially avoidable transfers to third parties, including insiders, by failing to disclose them in his Original Statement of Financial Affairs including those transfers identified on Exhibits 3(b) and 3(d) responsive to questions 3(b) and 3(c) on the Amended Statement of Financial Affairs.

38. The Debtor concealed his receipt of $76,460.00 in insurance proceeds from a loss in February 2014 by failing to disclose it on his Original Statement of Financial Affairs.

39. The Debtor concealed the following transfers by failing to disclose them on his Original Statement of Financial Affairs:

7

a. transfer of 2013 Cadillac Escalade EXT to his spouse through Sky Motors on April 17, 2014;

b. transfer of 100% interest in Bengal Direct to his spouse on January 1, 2012;

c. transfer of interest in a 2014 Porsche Cayman to his spouse on April 14, 2014 by titling the vehicle in joint ownership with right of survivorship;

d. transfer of interest in a 2014 Porsche Carrera Cayman to his spouse on April 18, 2014 by titling the vehicle in joint ownership with right of survivorship;

e. transfer of interest in a 2009 BMW X3 to his spouse in April, 2014 by titling the vehicle as tenants by entirety; and

f. transfer of interest in I.D.T. MLGP, LLC to a self-settled trust on February 15, 2005.

40. The Debtor concealed the following closed financial accounts by failing to disclose them on his Original Statement of Financial Affairs:

a. two money market accounts at Meridian Bank closed on April 17, 2014;

b. a gold account at Citibank closed on January 9, 2014;

c. a private bank account at Citibank closed on February 11, 2014; and

d. an investment account at Citibank closed on April 18, 2014.

41. The Debtor concealed two safety deposit boxes at First Niagara Bank and Firstrust Bank by failing to disclose them on his Original Statement of Financial Affairs.

42. The Debtor concealed his interest in the following businesses by failing to disclose them on his Original Statement of Financial Affairs:

    a. The Korn Group General Partner, LLC;

    b. EPI Engineering, LLC;

    c. Tulsa Paper Group, LLC a/k/a Tulsa Paper;

    d. Manitou Management, LLC;

    e. Alyis Paper Group, LLC;

    f. Mutt & Jeff, LLC;

    g. MLGP, LLC (DE entity);

    h. LSM, Inc.; and

    i. KAP Paper Products, Inc.

43. The Debtor failed to disclose in the Original Statement of Financial Affairs the name and address of accountants who kept, or supervised the keeping of, books of account and records of the Debtor.

44. The Debtor failed to disclose in the Original Statement of Financial Affairs the name and address of the following financial institutions, creditors or other parties to whom the Debtor issued a financial statement within two years of the Petition Date:

    a. Citibank;

    b. Meridian Bank; and

    c. GE Credit.

45. Upon information and belief according to the U.S. Trustee Complaint, the Debtor concealed transfers made by the Debtor twelve days before the Petition Date totaling approximately $51,000 from his individual Meridian Bank checking account and an individual money market account he held at Meridian Bank to a joint Meridian Bank checking account by failing to disclose the transfers in his Original Statement of Financial Affairs.

**The Unauthorized Post-Petition Transfers and Transactions**

46. After the Petition Date, the on May 2, 2014, the Debtor transferred $750,836.84 in proceeds from an LPL Brokerage account to pay an alleged claim of Meridian Bank.

47. After the Petition Date, the Debtor incurred $158,896.83 of post-petition American Express debt, largely for the benefit of his businesses entities.

48. The Debtor made the following payments to Archer Tax & Financial Group, P.C. ("Archer") without Court approval:

| | |
|---|---|
| April 25, 2014 | $2,000 |
| May 2, 2014 | $2,000 |

49. The Debtor did not obtain Court approval for the transfer of the $750,836.84 in proceeds to Meridian Bank, the $158,896.83 of post-petition American Express debt or the payments to Archer.

50. The Debtor concealed the transfer of the $750,836.84 in proceeds to Meridian Bank, the incurrence of the $158,896.83 of post-petition American Express debt and the payments to Archer by failing to disclose them in the Disclosure Statement, the Amended Disclosure Statement and the monthly operating reports that were filed before November 10, 2014 (the "Original Monthly Operating Reports").

51. The Original Monthly Operating Reports were false.

52. The Debtor concealed that he was receiving income from his businesses through payment of the Debtor's personal expenses by failing to report this income in his Original Monthly Operating Reports.

53. The Debtor concealed the transfer of the $750,836.84 in proceeds to Meridian Bank, the incurrence of the $158,896.83 of post-petition American Express debt and the post-petition payments to Archer by failing to disclose them in his Original Monthly Operating Reports.

**The Unauthorized Post-Conversion Transactions**

54. Upon information and belief according to the U.S. Trustee Complaint, on or about October 30, 2014, the Debtor opened an account at TD Bank named "The Scott H. Korn Disability Income Account" (the "Disability Income Account") where he deposited the $214,000.00 from the safe.

55. The Debtor had no legitimate reason to maintain the $214,000.00 in a safe.

56. Upon information and belief according to the U.S. Trustee Complaint, on December 12 and December 18, 2014, the Debtor transferred $40,000.00 and $80,000.00 from the Disability Income Account to his debtor-in-possession account.

57. Upon information and belief according to the U.S. Trustee Complaint, on December 19, 2014, the Debtor transferred $79,000.00 from his debtor-in-possession account to the Disability Income Account. This transfer occurred after the conversion of the case to chapter 7.

58. Upon information and belief according to the U.S. Trustee Complaint, in addition to concealing these monies and comingling them with other funds, the Debtor failed to maintain

records to enable the chapter 7 trustee or any party in interest to trace the proceeds from any payments he received from the disability policies to the Petition Date.

**Failure to Explain Loss of Assets**

59. Upon information and belief according to the U.S. Trustee Complaint, two advances were made to the Debtor on his Meridian Bank revolving line of credit on April 7, 2014 in the amounts of $130,000.00 and $50,000.00 (the "Advances").

60. The Debtor's bankruptcy disclosures do not account for the Advances, their use or dissipation and do not reflect any property acquired from the Advances.

61. The Debtor has not satisfactorily explained the use, loss or dissipation of the Advances.

62. Upon information and belief according to the U.S. Trustee Complaint, on or about June 10, 2013, the Debtor submitted one or more financial statements to Citibank stating he owned automobiles, art, jewels, watches, and other assets with a combined value of $600,000. On his Original Schedules, the Debtor valued his interests in these same items at less than $100,000. To the extent that the value listed on the Original Schedules was reasonably accurate, the Debtor has not explained the loss of assets.

63. The Debtor stated on the financial statement(s) submitted to Citibank that he had life insurance with a cash surrender value of $400,000 which is almost twice the amount listed on his Original Schedules. To the extent that the value listed on the Original Schedules was reasonably accurate, the Debtor has not explained the loss of assets.

**The False Testimony at the Chapter 11 Section 341 Meeting**

64.    During the chapter 11 section 341 meeting, the Debtor testified under oath that he did not have any vehicles other than a Harley Davidson motorcycle which he claimed he used to commute to work and a Honda which he leased.

65.    At the time of the chapter 11 section 341 meeting, the Debtor owned the two Porsches and the BMW X3 jointly with his wife and regularly drove the Cadillac Escalade.

**The False Certifications Under Penalty of Perjury**

66.    The Debtor signed and filed a "Declaration Concerning Debtor's Schedules" on May 2, 2014 declaring under penalty of perjury that he read the Original Schedules and that they are true and correct to the best of his knowledge, information and belief.

67.    The Debtor signed and filed the Original Statement of Financial Affairs on May 2, 2014 declaring under penalty of perjury that he read the Original Statement of Financial Affairs and that they are true and correct to the best of his knowledge, information and belief.

68.    The Debtor signed and filed each of the Original Monthly Operating Reports declaring under penalty of perjury that the reports and documents attached were true and correct to the best of his knowledge and belief.

69.    The Original Schedules, Original Statement of Financial Affairs and Original Monthly Operating reports contained material errors, omissions, misstatements, and falsities and were not true and correct as more fully described in this complaint.

70.    The Debtor failed to correct these material errors, omissions, misstatements and falsities until ordered to do so by the Court and only after problems with the disclosures were disclosed in the American Express Complaint.

71. The Debtor testified under oath during a deposition in this bankruptcy case on November 14, 2014 that he "didn't really review any of" the Original Schedules and that he "scanned it" but "didn't even review it." He also testified that he "did not carefully review" the Original Schedules.

72. The Debtor testified under oath during a deposition in this case on November 14, 2014 that he did "not really" review the Original Statement of Financial Affairs.

73. The Debtor testified under oath during a deposition in this case on November 14, 2014 that he "sort of scan[ned]" the Originally Monthly Operating Reports but "didn't really look at it too much."

74. The Debtor's declarations with regard to the Original Schedules, Original Statement of Financial Affairs and Original Monthly Operating Reports are materially false.

**The Failure to Maintain Records**

75. Upon information and belief according to the U.S. Trustee Complaint, the Debtor concealed, destroyed, mutilated, falsified or failed to keep or preserve recorded information from which his financial condition or business transactions might be ascertained, specifically, and without limitation: the disposition of the advances he received in April 2014 from the Meridian Bank revolving line of credit; the transactions between the Debtor and one or more of his entities; the disposition of the disability insurance benefits he received; the disposition of distributions he received from his business entities prior to the Petition Date; the disposition of monies held in accounts he closed prior to the Petition Date, if any; and the disposition of assets contained in the safe deposit box he closed, if any.

76. The Debtor claimed that certain documents relating to his financial condition were not available for production in connection with the Motion to Covert because his companies' computer server and back-up server both crashed after the Petition Date.

### COUNT I – OBJECTION TO DISCHARGE
### PURSUANT TO 11 U.S.C. § 727(a)(2)

77. Brown incorporates into this count each of the allegations in this complaint.

78. Pursuant to 11 U.S.C. § 727(a)(2), the Debtor should not be granted a discharge because he, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed: (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition.

79. The Debtor concealed the property described in this complaint with intent to hinder, delay or defraud creditors or an officer of the estate charged with custody of property under the Bankruptcy Code.

80. The Debtor made the pre-petition and post-petition transfers described in this complaint with intent to hinder, delay or defraud creditors or an officer of the estate charged with custody of property under the Bankruptcy Code.

81. The Debtor intentionally attempted to conceal some or all of the pre-petition and post-petition transfers described in this complaint.

82. The transfers described in this complaint were made for inadequate consideration.

83. The transfers described in this complaint were made to, or for the benefit of, the Debtor's family or parties with close relationships to the Debtor.

84. The Debtor retained possession, benefit or use of the property described in this complaint as being transferred.

85. The pre-petition transfers described in this complaint were done in anticipation of claims asserted by one or more of the Debtor's creditors or in anticipation of these bankruptcy proceedings.

86. The Debtor was insolvent or in poor financial condition at the time of the transfers described in this complaint.

87. The Debtor attempted to conceal the transfers related to the LPL Brokerage account and the $214,000.00 in the safe by causing his wife to assert a privilege that was not available to her and not applicable to the situation and by failing to disclose Meridian Bank as a creditor.

88. The Debtor attempted to conceal the property and transfers described in this complaint by witholding, and failing to produce, documents in connection with discovery in the bankruptcy case.

## COUNT II – OBJECTION TO DISCHARGE
## PURSUANT TO 11 U.S.C. § 727(a)(3)

89. Brown incorporates into this count each of the allegations in this complaint.

90. Pursuant to 11 U.S.C. § 727(a)(3), the Debtor should not be granted a discharge because he concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Debtor's financial condition or business transactions might be ascertained and his actions or failure to act was not justified under all of the circumstances of the case.

## COUNT III – OBJECTION TO DISCHARGE
## PURSUANT TO 11 U.S.C. § 727(a)(4)(A)

91. Brown incorporates into this count each of the allegations in this complaint.

16

92. Pursuant to 11 U.S.C. § 727(a)(4)(A), the Debtor should not be granted a discharge because the Debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account and provided false testimony under oath.

93. The Debtor fraudulently made and submitted the declarations under penalty of perjury on the Declaration Concerning Debtor's Schedules, Original Statement of Financial Affairs and Monthly Operating Reports with knowledge of the material errors, omissions, misstatements, and falsities described in this complaint or with reckless indifference to the truth of the declarations.

94. The Debtor repeated the material errors, omissions, misstatements, and falsities in the Disclosure Statement and Amended Disclosure Statement in order to further conceal the matters from discovery.

**COUNT IV – OBJECTION TO DISCHARGE
PURSUANT TO 11 U.S.C. § 727(a)(4)(D)**

95. Brown incorporates into this count each of the allegations in this complaint.

96. Pursuant to 11 U.S.C. § 727(a)(4)(D), the Debtor should not be granted a discharge because the Debtor knowingly and fraudulently, in or in connection with the case, withheld from an officer of the estate entitled to possession recorded information, including books, documents, records, and papers, relating to the Debtor's property or financial affairs.

**COUNT V – OBJECTION TO DISCHARGE**
**PURSUANT TO 11 U.S.C. § 727(a)(5)**

97.     Brown incorporates into this count each of the allegations in this complaint.

98.     Pursuant to 11 U.S.C. § 727(a)(5), the Debtor should not be granted a discharge because he failed to explain satisfactorily a loss of assets as described in this complaint.

**WHEREFORE**, John Brown respectfully requests that the Court enter an order denying the Debtor's discharge.

Dated: March 16, 2015                    Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

s/Mark Pfeiffer

William H. Schorling, Esquire
Mark Pfeiffer, Esquire
Two Liberty Place
50 S. 16th Street, Ste. 3200
Philadelphia, PA 19102
(215) 665-8700
*Attorneys for John Brown*